**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

DAVID E. GALLEGOS III,

      Plaintiff,

v.                                                                                                  CV 20-0039 JB/JHR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration,[1]

      Defendant.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Before the Court is Plaintiff David E. Gallegos, III's Motion to Reverse and Remand (the decision of the Commissioner of Social Security) for a Rehearing with Supporting Memorandum [Doc. 17], fully briefed on November 10, 2020. [Doc. 24]. Pursuant to 28 U.S.C. § 636(b), this matter was referred to the undersigned Magistrate Judge to recommend a final disposition. [Doc. 6]. Having reviewed the parties' submissions, the relevant law, and the relevant portions of the Administrative Record (*AR*), I find that the administrative law judge ("ALJ") who decided this case failed to comply with binding circuit precedent when she effectively rejected the restrictions that Mr. Gallegos' treating physician, Jill Rhymes, M.D., would impose on his residual functional capacity ("RFC"), instead dismissing the opinion with no specific citation to contrary record evidence and with apparent disregard for evidence that was consistent with Dr. Rhymes' opinion. I recommend that Mr. Gallegos' Motion be **granted,** and this case **remanded** to the Social Security Administration for further proceedings.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, is substituted for former Commissioner Andrew Saul as the Defendant in this suit.

I.   **PROCEDURAL HISTORY**

Mr. Gallegos initially applied for supplemental security income benefits under Title XVI of the Social Security Act on April 24, 2014. *AR* at 183-188. In support of his application Mr. Gallegos alleged a disability onset date of October 15, 2013, due to back injury, right knee injury, left leg injury and a gunshot to his left leg. *AR* at 200-213. The Administration denied Mr. Gallegos' application initially and upon reconsideration, and an ALJ issued an unfavorable decision after holding a hearing. *See AR* at 31-122. The Appeals Council denied review on December 7, 2017. *AR* at 1-6. Mr. Gallegos appealed the Administration's decision to this Court, which ultimately entered an Order granting the parties' Stipulated Motion to Remand on February 25, 2019. *AR* at 491-521. On remand the Appeals Council consolidated Mr. Gallegos' claim with a later application for benefits where the Administration found him disabled as of January 26, 2018 but remanded the portion of his claim for further analysis. *AR* at 524. The Appeals Council specifically instructed the new ALJ to "evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 416.924 and explain the weight given to such opinion evidence." *AR* at 525.

On remand, ALJ Ann Farris held a hearing on October 10, 2019, where Mr. Gallegos and a vocational expert appeared and testified. *AR* at 465-490. Mr. Gallegos testified that during the relevant period he was fired from multiple jobs because there were days he could not get out of bed because of his back injury. *AR* at 474. He conceded that he was still able to fish and camp but stated that, whereas he used to fish in the river, he had to alternate standing and sitting next to a lake. *AR* at 475. In addition to taking medication to relieve his pain, he would try and walk around "his yard and stuff but if [he did] too much, [he] start[ed] getting real sharp pains in [his] back and down [his] leg." *AR* at 476. He also did at home physical therapy exercises but stopped because

they were not helping. *AR* at 478. On examination by his attorney Mr. Gallegos reported that he was unable to tie his own shoes and that his mother and stepfather did most of the housework. *AR* at 480-481. Lifting and bending made his pain worse. *AR* at 483.

The vocational expert also testified. *AR* at 486-8. She stated that Mr. Gallegos could have worked as an envelope stuffer, final assembler and table worker based on his prior work and what she had heard at the hearing. *AR* at 487. However, when asked by Mr. Gallegos' attorney whether jobs existed for a person who could only sit for two hours, stand for two hours, and walk for one hour total during an eight-hour workday, consistent with Dr. Rhymes' opinion, the vocational expert testified that no jobs would be available. *AR* at 488. Mr. Gallegos' attorney concluded by highlighting Dr. Rhymes' opinion, among other things. *AR* at 489.

Nonetheless, after the hearing ALJ Farris issued an unfavorable decision on November 14, 2019. *AR* at 442-463. The Appeals Council did not assume jurisdiction over the case, and so ALJ Farris' decision became the final decision of the Commissioner. See 20 C.F.R. § 416.1484(d). Mr. Gallegos filed a timely Complaint appealing the decision on January 14, 2020. [*See* Doc. 1]. This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a). District Judge James O. Browning and the undersigned Magistrate Judge were assigned to the case, Judge Browning referred the case to me, and briefing was completed on November 10, 2020. [Docs. 6, 16, 17, 19, 23, 24].

## II.     THE COMMISSIONER'S FINAL DECISION

A claimant seeking social security benefits under the Act must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(l)(A),

1382c(a)(3)(A); 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4).[2]

At step one of the sequential evaluation process the ALJ found that Mr. Gallegos has not engaged in substantial gainful activity since his application date, April 21, 2014. *AR* at 447. At step two, the ALJ determined that Mr. Gallegos had the following severe impairments during the relevant time period: lumbar stenosis; remote gunshot wound to the left leg; right knee injury; alcohol use; panic disorder without agoraphobia; post-traumatic stress disorder (PTSD); depression; and anxiety. *AR* at 448. At step three, the ALJ determined that Mr. Gallegos' impairments do not meet or medically equal the regulatory "listings." *AR* at 448-450. Mr. Gallegos does not challenge the ALJ's findings at steps one through three here. [*See generally* Doc. 17].

When a claimant does not meet a listed impairment at step three the ALJ must determine the extent to which he remains able to work before proceeding to identify past work he is capable of performing at step four or other jobs he can still do at step five. This assessment of the claimant's remaining ability is referred to as his residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is not the least an individual can do despite his or her limitations or restrictions, but the most." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Mr. Gallegos retained the RFC to:

---

[2] The Tenth Circuit summarized these steps in *Allman v. Colvin,* 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulations.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

>perform less than a full range of sedentary work as defined in 20 CFR 416.967(a). He should never climb, kneel, crouch, or crawl. In addition, he should avoid exposures to hazardous conditions, including unprotected heights and dangerous moving machinery. The claimant was limited to simple work-related decisions with few workplace changes, and only occasional superficial interactions with the general public.

*AR* at 450.

Pertinent here, while formulating Mr. Gallegos' RFC ALJ Farris weighed the opinions of the medical providers who had treated him, examined him, or reviewed his medical records. When she came to treating Dr. Rhymes, the ALJ summarized the same opinion that Mr. Gallegos' attorney highlighted at the hearing, an opinion which limited him to sitting and standing up to two hours in an eight-hour day and walking a maximum of one hour. *AR* at 454. Rather than adopting Dr. Rhymes' limitations, the ALJ gave "little weight to Dr. Rhymes' evaluation, since it is not consistent with the objective medical evidence in the claimant's treatment records, including her own, the claimant's response to treatment, and his daily activities." *AR* at 454.

The ALJ did not identify the medical evidence which is inconsistent with Dr. Rhymes' limitations and did not elaborate as to how Mr. Gallegos' response to treatment and daily activities showed him capable of performing sedentary work. *See AR* at 450-455. When discussing Mr. Gallegos' RFC she summarized: his available medical records which showed improvement with physical therapy in February 2013, before the period at issue; a consultative examination in July 2014 to which the ALJ gave only "some weight" because it appeared to minimize Mr. Gallegos' back injury; treatment records assessing lumbar spinal stenosis, radiculopathy of the lumbar region, other intervertebral disc degeneration of the lumbar region, sacroiliac joint dysfunction, a bulging disc at L4-5, and recent removal of hardware from his left femur in March 2016; Dr. Rhymes' opinion in May 2017 which would limit him to sitting and standing up to two house in an eight-hour workday; and October 2017 treatment notes showing the ability to bear weight with

5

pain. *See AR* at 451-453. As to his response to treatment, at another point in her discussion of Mr. Gallegos' RFC the ALJ described "treatment records showing 50 percent improvement in pain management with lumbar steroid injection." *AR* at 453. The ALJ also summarized Mr. Gallegos' testimony and function reports, including his assertion that he could only sit for 20 minutes at a time, but determined that after "careful consideration of the evidence … the claimant's medically determinable impairments might have been expected to cause some of the alleged symptoms during the period at issue; however, the claimant's statements are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *AR* at 450-451.

The ALJ applied the RFC she formulated for Mr. Gallegos at steps four and five. At step four she determined that he could not have returned to his past relevant work as a construction laborer, lubrication technician or vending machine technician. *AR* at 455. However, employing the testimony of the vocational expert at step five, ALJ Farris found Mr. Gallegos not disabled during the relevant time period because he could have worked as an envelope stuffer, final assembler, or table worker. *AR* at 456.

### III.  LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "[I]n making this determination, [this Court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016). However, "the agency's 'failure to apply the correct

legal standards, or to show [the Court] that it has done so' is 'grounds for reversal.'" *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 640 (10th Cir. 2018) (unpublished) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)). "'Substantial evidence' means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### IV.  ISSUES PRESENTED

1. Did the ALJ err when formulating Mr. Gallegos' RFC by giving little weight to Dr. Rhymes' opinion because it "is not consistent with the objective medical evidence in the claimant's treatment records, including her own, the claimant's response to treatment, and his daily activities"?

2. Did the ALJ err when formulating Mr. Gallegos' RFC by giving little weight to the opinions of the examining medical consultants when she reasoned that their opinions were inconsistent with the objective medical evidence, Mr. Gallegos' response to treatment, and his daily activities?

3. Did the ALJ err at Step Five by failing to resolve a conflict between the Vocational Expert's testimony and the Dictionary of Occupational Titles or by failing to conduct a factual analysis of Mr. Gallegos' ability to access the jobs within his RFC as required by Tenth Circuit precedent?

### V.  ANALYSIS

The Court only addresses the first issue presented, in the interest of judicial efficiency, as the Administration may choose to revisit the others on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). To do so the Court first resolves a dispute amongst the parties

concerning the meaning of "little weight" in the Tenth Circuit, then discusses the reversible error committed here.

### A. Giving "little weight" to an opinion equates to "effectively rejecting" it, at least in the Tenth Circuit.

Mr. Gallegos' opening brief cites *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012), for the proposition that "according little weight to" an opinion with is the same as "effectively rejecting" it. [Doc. 17, p. 12 n. 10]. The Commissioner takes issues with this note in the response brief, arguing that the Court should reject Mr. Gallegos' "attempt to recharacterize" the ALJ's assessment of Dr. Rhymes' opinion "by misconstruing *Chapo*." [Doc. 19, p. 6]. The Commissioner's argument implies that because the ALJ did not reject *all* of Dr. Rhymes' limitations she did not "effectively reject" the opinion. [*See id.*]. Mr. Gallegos' reply brief points out that if the Commissioner's argument is accepted then the ALJ still rejected the most pertinent of Dr. Rhymes' findings – that he cannot complete an eight-hour workday based on the sitting and standing limitations – which violates another provision of *Chapo*: "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of disability." [Doc. 23, p. 7 (quoting *Chapo*, 682 F.3d at 1291)]. The Court finds Mr. Gallegos has the better argument.

As a matter of pure academics, the *Chapo* court indeed equates "according little weight to" an opinion with "effectively rejecting" it, and the Tenth Circuit has indicated in later (albeit unpublished) decisions that it will continue applying such reasoning. *See Crowder v. Colvin*, 561 F. App'x 740, 742 (10th Cir. 2014) (unpublished) (citing *Chapo* for this proposition); *Ringgold v. Colvin*, 644 F. App'x 841, 844 (10th Cir. 2016) (unpublished) (same). Indeed, this Court has previously relied on these cases to apply the "effective rejection" language, *see Tenorio v. Berryhill*, 2019 WL 530016, at \*4 (D.N.M. Feb. 11, 2019), and the Commissioner has not

persuasively convinced this Court that reasoning should be abandoned. Moreover, in this case the ALJ gave "little weight" to Dr. Rhymes' evaluation because "it is not consistent with the objective medical evidence in the claimant's treatment records, including her own, the claimant's response to treatment, and his daily activities," *AR* at 454, thereby citing several of the regulatory factors applicable to such opinions in an attempt to justify rejection of the very limitations Mr. Gallegos says should have been adopted.[3] In sum, the ALJ "effectively rejected" Dr. Rhymes' opinion, whether under circuit precedent or the facts of this case. The remaining question is whether the ALJ's reasoning withstands scrutiny.

> **B. The reasoning behind the ALJ's rejection of Dr. Rhymes' opinion is too vague, and she appears to have selectively cited the record, which is contrary to circuit law.**

Turning to the crux of this case, the Court finds that the ALJ's reasoning was insufficient. Under circuit precedent an ALJ's reasons for assessing a treating source's medical opinion must be sufficiently specific for meaningful judicial review. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see, e.g.*, *Lewis v. Berryhill*, 680 F. App'x 646, 647 (10th Cir. 2017) ("The administrative law judge's second reason is too vague. The judge said that Dr. Muckala's opinion

---

[3] "It is the ALJ's duty to give consideration to all the medical opinions in the record. . . . [Sh]e must also discuss the weight [s]he assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citations omitted).

> When evaluating the opinion of any medical source, an ALJ must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (citing *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); 20 C.F.R. §§ 404.1527(c), 416.927(c)). "If an ALJ rejects an opinion, she 'must provide specific, legitimate reasons for rejecting it.'" *Kellams*, 696 F. App'x at 917 (citing *Chapo*, 682 F.3d at 1291).

9

was inconsistent with the medical record. Which part of the record? The judge didn't say."). Here, the ALJ's reasons for rejecting Dr. Rhymes' opinion were not specifically tied to citations to the record, and her discussion of the evidence included many examples of restrictions that were actually consistent with it. While substantial evidence is a low bar it can be lacking, and where an ALJ's analysis is too vague to permit the reviewing court to determine how a conclusion was reached her conclusion is not only uncertain but contrary to case law.

More concerning is the ALJ's apparent disregard for the regulatory factors and failure to adopt the opinion of a treating physician when record evidence was consistent with her opinions and the same claimant was later found disabled. The Tenth Circuit has "repeatedly held that 'an ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.'" *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Yet, the ALJ here appears to have selectively chosen which part of the record to focus on. There is evidence in Mr. Gallegos' treatment records which is consistent with Dr. Rhymes' opinion; unsupportive records predate his application. Mr. Gallegos' best response to treatment was a 50% decrease in back pain after an injection (unconnected to physical abilities or limitations after). His daily activities as summarized by the ALJ are consistent with Dr. Rhymes' restrictions. Therefore, the ALJ's analysis is unsupported by substantial evidence and is contrary to the law of this circuit, warranting remand.

## VI. RECOMMENDATION

It appears as though the ALJ in this case selectively chose from the record and rejected limitations imposed by a treating physician's opinion for the sole purpose of denying benefits. The undersigned agrees with Mr. Gallegos that the Commissioner committed a harmful reversible error

in this case, and that this case should be remanded for reevaluation of Dr. Rhymes' opinion and further analysis as is required thereafter.

Wherefore, **IT IS HEREBY RECOMMENDED** that Mr. Gallegos' Motion to Remand [Doc. 20] be **granted**.

_____
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**